# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**REZA FARASAT**
8347 Fairhaven Lane
Montgomery,
Alabama 36117

*Plaintiff,*

**vs.**

**TOSOH BIOSCIENCE INC.,**
3604 Horizon Dr, Suite 100
King of Prussia
PA 19406

And

**JAMES P. SHAFFER**
3600 Gantz Rd.,
Grove City
OH 43123-1895

And

**TASHA NUGYEN**
600 Shoreline Ct., Suite 100
South San Francisco,
CA 94080

And
**ATIS CHAKRABARTI**
3604 Horizon Dr., Suite 100
King of Prussia
PA 19406

And

**ALI SOLEYMANNEZHAD**
3604 Horizon Dr., Suite 100
King of Prussia
PA 19406

NO. _____

CIVIL ACTION

JURY TRIAL DEMANDED

1

## COMPLAINT

Plaintiff, by and through undersigned counsel, hereby files the following Complaint against Defendants:

## I. INTRODUCTION

1. Plaintiff initiates this action to seek redress against the Defendants for unlawful discrimination, breach of contract and malicious interference with contractual relations in violation of federal and state law.

## II. PARTIES

2. Plaintiff Reza Farasat ("Plaintiff") is an adult individual currently residing at the above captioned address.

3. Defendant, Tosoh BioScience LLC, is a private corporation involved in developing, manufacturing and commercializing in vitro diagnostics for medical applications in doctor's offices, hospitals and references the laboratories in the Americas and has numerous addresses throughout the United States. However, the address set forth on the caption is where Plaintiff worked.

4. Defendant James P. Shaffer is the Vice President of Human Resources for Tosoh and works out of the office at the address set forth on the caption.

5. Defendant Tasha Nugyen is the General Counsel of Defendant Tosoh and is located at the address set forth on the caption.

6. Atis Chakrabarti was, at all times relevant, Plaintiff's manager and integrally involved in the discrimination and retaliation set forth herein.

7. Ali Soleymannezhad is the director of Tosoh and integrally involved in the discrimination and retaliation set forth herein.

8. At all times relevant hereto, Defendants acted on their own and/or by and through their agents, servants, and employees, each of whom, always relevant, acted within the scope of their job duties.

9. Defendant is an "employer" within the meaning of the Pennsylvania Human Relations Act ("PHRA").

### III. JURISDICTION and VENUE

10. All the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

11. The Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are enough for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the Supreme Court of the United States in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

12. The United States District Court for the Eastern District of Pennsylvania may exercise original subject-matter jurisdiction over the instant action pursuant to racial discrimination and retaliation under 42 U.S.C. §1981.

13. The United States District Court for the Eastern District of Pennsylvania may exercise diversity jurisdiction over the instant action pursuant to 28 U.S.C. §1332 because the parties are completely diverse and the matter in controversy exceeds $75,000.00.

14. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction in that they form part of the same case or controversy.

15.    Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because the Defendant Tosoh is located in and conducts business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district (Plaintiff was employed in the Eastern District of Pennsylvania at the time of the illegal actions set forth herein).

## IV.  PROCEDURAL and ADMINISTRATIVE REMEDIES

16.    All the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

17.    Plaintiff filed an EEOC complaint on August 30, 2017 sounding in national origin discrimination against Defendant Tosoh BioScience and two aiders and abettors, who are not Defendants in this case.

18.    Plaintiff cross-filed a timely written charge of discrimination with the Philadelphia office of the Equal Employment Opportunity Commission and the Pennsylvania Human Relations Commission alleging discrimination (No. 530-2017-03798C).

19.    Prior to the September 5, 2018 deadline, which would require the Plaintiff to sue due to the expiration of the 90-day window, as set forth in the Right to Sue letter from the EEOC, the case resolved as set forth in more detail *infra*.

## V.  FACTUAL BACKGROUND

20.    All the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

4

21. Plaintiff worked for Defendant Tosoh Bioscience LLC, ('Tosoh') located at 3604 Horizon Drive #100, King of Prussia, PA 19406 from April 11, 2016 until September 2017 when he was unlawfully terminated from their employment.

22. Plaintiff is a chemist with a PhD and a postdoc.

23. When Plaintiff filed his EEOC complaint and cross filed it with the PHRC, he complained based on National Origin Discrimination because he is originally from Iran.

24. Plaintiff is also of the Iranian race.

25. On August 17, 2017, Plaintiff was given a bogus Performance Improvement document to sign which alleged that he had not met performance standards.

26. The bogus performance review stated in relevant part that, "Reza failed to provide a quality poster presentation material for ACS (American Chemical Society) 2017."

27. However, Plaintiff's abstract was accepted by American Chemical Society (ACS). Plaintiff has been published and have presented in ACS multiple times prior coming to Tosoh.

28. However, simply because the research result did not show the company's products favorably, Plaintiff was required by the management of the company (Ali Soleymannezhad) to withdraw his presentation from ACS.

29. In addition, Plaintiff's colleague (William Evans) and Plaintiff's manager (Atis Chakrabarti) were required to withdraw a poster from the same conference but neither of them received any warning regarding their poster withdrawal and/or any negative performance review.

30. Neither William Evans nor Atis Chakrabarti are from Iran.

31. Plaintiff was also required by his supervisor, out of the blue, gratuitously and for no scientific reason, to propose 5 ideas for experiments.

32. In Plaintiff's performance review, it stated, in relevant part that "Reza has not delivered upon this assignment by failing to provide a single viable proposal."

33. In fact, Plaintiff was requested to give 5 "ideas" by the end of quarter.

34. He absolutely completed that assignment and did so on 03/17/2017, before the deadline.

35. Plaintiff was never asked to give "proposals" prior to his performance improvement document.

36. In that performance review document, Atis Chakrabarti, Plaintiff's supervisor deliberately interchanged the words "ideas" and "proposals."

37. However, they are completely different.

38. Further, Plaintiff was singled out, for no legitimate reason, and to give 5 proposals in 6 weeks on top of all his other work responsibilities.

39. In addition, Atis Chakrabarti knew that was impossible.

40. It was simply a bogus attempt to load Plaintiff up with work for the sole intention of writing him up and ultimately terminating his employment.

41. Moreover, Plaintiff was told by Ali Soleymannezhad (director) and Ilir Koliqi (lab sales manager) that this assignment was not a priority.

42. Plaintiff was told that his priority should be sample analysis for the company.

43. The fact that this was not a priority, simply evidences the fact that it was given to Plaintiff by Mr. Chakrabarti as busywork, not directed to advance the employer's interest, and for the purpose of setting him up so he could be unlawfully terminated.

44. In any event, despite this, Plaintiff met and/or surpassed each of his goals in each performance review.

45.   Plaintiff was singled out and made to take the blame for the company's own systemic manufacturing defects, which resulted in defective columns being distributed across the globe to Tosoh's customers because Plaintiff is from Iran and of the Iranian race and would be looked on with suspicion and an easy scapegoat.

46.   Another example of national origin and race discrimination was that the other labs, where Plaintiff did not work, had a service contract.

47.   The technical services specialists in these labs had easy access to field services.

48.   However, Plaintiff was the only one singled out and was required to repair the instruments in his lab (GPC lab).

49.   Further, when Plaintiff had difficulties, repairing these instruments and requested field services, he was told that he should not wait for field service and was required to repair the instruments himself which was not only outside his expertise but also extraneous to his job responsibilities.

50.   No other scientist was required and/or forced to do this.

51.   On July 28, 2017 and on August 18, 2017, Plaintiff experienced further discrimination from his manager (Atis Chakrabarti) when Plaintiff, the only employee from Iran, was not permitted to attend interviews for technical department openings when everyone else, from his own department was so permitted.

52.   On August 17, 2017, Defendant Chakrabarti yelled at the Plaintiff and accused Plaintiff of making him angry because Plaintiff had pointed out an experiment result which showed that the Defendant Tosoh had engaged in fraud.

53.    Plaintiff was not willing to participate in fraud so, Defendants not only discriminated against him, they also blamed him for poor scientific quality when the results showed poor instrumental quality.

54.    Also, management expected the Plaintiff to change the baselines of his experiments to show the results in Tosoh's favor but, Plaintiff knew that was fraud and further knew that this fraud was going to be perpetrated, as a crime, on Tosoh's customers, worldwide.

55.    Plaintiff refused to be a part of any criminal conspiracy by misrepresenting scientific data and being a part of perpetrating a fraud on Tosoh's customers.

56.    In this case, the fraud involved a deliberate cover-up and misrepresentation of the defects, scientifically proven, involving the columns it sells.

57.    Plaintiff was retaliated against and discriminated against for refusal to participate in criminal activity.

58.    In the third week of January 2017, Tosoh held a Sales Meeting and Plaintiff was scheduled to give a presentation but was prevented from presenting the section about obstacles he had observed and experienced at Tosoh doing so by Defendant Chakrabarti who allowed all the other technical department staff, none of whom were from Iran, to    complete their presentations

59.    Further, on an ongoing basis, Defendant Soleymannezhad frequently disagreed with Plaintiff's scientific comments and ideas for no good reason except to cover up Tosoh's systemic fraud.

60.    At the same time, he attempted to get the Plaintiff to be a participant in deliberate unscientific processes which would reflect poorly upon him.

8

61.    Plaintiff was therefore accused of "lacking the scientific skill to successfully analyze the data for the GPC 2017 project," when in fact he presented the data for the GPC 2017 conference in a meeting, early in the process and expressed his concern about a trend in the data which would indicate a problem with the instrument columns Tosoh sells.

62.    Defendant Soleymannezhad told Plaintiff the data was fine but that he, the Plaintiff, did not know how to set the baseline for the runs.

63.    Later, Plaintiff discovered that this trend was an indicator of instrumental failing, not scientific error on his part.

64.    In short, Defendant Tosoh was trying to cover up systemic problems with its manufactured columns.

65.    Tosoh has distributed and continues to distribute defective columns to its worldwide clients telling them that there are no real defects with them.

66.    Tosoh in general and the Plaintiff in particular, knew of actual complaints by Tosoh's customers because of these defects.

67.    Defendants terminated Plaintiff, not only because he could be targeted because he was from Iran and of the Iranian race but also because he refused to participate in the ongoing criminal fraud.

68.    Plaintiff believes that wholesale fraud is being committed by Tosoh.

69.    Further, in the GPC 2017 project, Plaintiff's data showed that the polydispersity increases in polyethylene sample over the course of injections, but Defendant Ali Soleymannezhad insisted that the Plaintiff was wrong, when he was not and tried to force the Plaintiff to change the baseline to show that the polydispersity decreases, which aligned with Tosoh's attempt to justify an illegal cover up.

70.     When, towards the end of the project, he and a colleague (Sebastien Rouzeau) checked the data, they found out that Plaintiff's ideas about polydispersity shift were correct.

71.     However, Tosoh, through its agents and employees, deliberately blamed the Plaintiff when the columns failed.

72.     Plaintiff was singled out to be made scapegoat because of his national origin, his race and his refusal to be part of a criminal conspiracy.

73.     Notably, this case resolved on August 15, 2018, shortly before Plaintiff had to file suit, pursuant to his Right to Sue from the EEOC.

74.     Defendants however, sent the Plaintiff a settlement agreement and snuck in a term which was never agreed to, namely that the settlement agreement was required to be signed by the Plaintiff within 30 days.

75.     Defendants knew that within those 30 days, Plaintiff's time on his Right to Sue would expire and they thought Plaintiff would not be able to file a lawsuit thereafter.

76.     In any event, not only was the 30 day fuse a nonmaterial term, since it was never agreed to, Plaintiff was in the process of relocating and between addresses at the time.

77.     When Plaintiff's counsel indicated this to Defendant Nugyen, she was rude and dismissive and informed Plaintiff's counsel that her client was not going to pay the settlement amount.

## COUNT I

## WRONGFUL DISCHARGE

## (PLAINTIFF'S OBJECTIONS TO A COURSE OF CONDUCT BY DEFENDANTS THAT WAS PLAINLY ILLEGAL)

78.    The averments of the foregoing paragraphs are hereby incorporated by reference as if set forth fully herein.

79.    It is submitted that a public policy exception to the at will rule exists when a Plaintiff objects to a course of action that the employer is taking that is clearly illegal." *Kelly v. Ret. Pension Plan for Certain Home Office, Managerial and Other Employees of Provident Mutual,* 73 Fed. Appx. 543, 544 (3d Cir. 2003); *see also Clark v. Modern Group Ltd.,* 9 F.3d 321, 330 (3d Cir. 1993).

80.    In this case, the Plaintiff objected to the clear violations of injecting into the stream of commerce (namely to their customers) instrument columns which were defective and then covering up their fraud and he was terminated because of his refusal to participate in this illegal conduct.

81.    As a result of the termination of her employment by Defendants, Plaintiff has incurred damages including but not limited to lost wages and benefits, lost employment opportunities, lost training, pain and suffering, and other damages, all of which are continuing and ongoing.

**WHEREFORE**, Plaintiff respectfully requests that judgment be entered in his favor and against Defendant for compensatory and punitive damages in an amount in excess of $500,000.00.

11

## COUNT II

## RACE DISCRIMINATION - 42 U.S.C. § 1981

## DISCRIMINATION AND RETALIATION

82. All the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

83. The facts asserted to support Plaintiff's claims of racial discrimination under 42 U.S.C. § 1981.

84. At all times relevant herein, Plaintiff maintained or sought to maintain a contractual relationship with Defendant both in terms of his employment and then, pursuant to a settlement agreement, which was also contractual.

85. At all times relevant herein, Defendant acted by and through its agents, servants, and employees to intentionally discriminate against Plaintiff based on his race and thereby deny him the benefits of both contractual relationships.

86. At all times relevant herein, Plaintiff was also subjected to unlawful retaliation by virtue of engagement in protected activity and complaining about racial (and other forms of) discrimination.

87. At all times relevant herein, Plaintiff was subjected to an unlawful hostile-work environment because of his race as set forth *supra*.

88. As a result of Defendant's unlawful discrimination and retaliation, Plaintiff has suffered damages as set forth herein.

## COUNT III

## PENNSYLVANIA HUMAN RELATIONS ACT

## PLAINTIFF v. DEFENDANTS

89.    All the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

90.    The facts asserted to support Plaintiff's race discrimination claims *supra,* also support a claim of discrimination under the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.*

91.    The foregoing race and retaliation claims by the Defendants also violate the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.*

92.    As a result of Defendant's violations of the Pennsylvania Human Relations Act, Plaintiff has suffered damages as set forth herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment in his favor and against Defendants and that it enters an Order as follows:

a.  The Defendants are to be permanently enjoined from engaging in racial or national origin discrimination, harassment, and/or retaliation against the Plaintiff on any other basis prohibited under applicable law;

b.  The Defendants are to be prohibited from continuing to maintain their illegal policy, practice, or custom of permitting discrimination and retaliation in the workplace, and are to be ordered to promulgate an effective policy against such harassment and discrimination and to adhere thereto;

13

c.   The Defendants are to be prohibited from continuing to maintain its unlawful policy, practice, or custom of discriminating against employees based on their race or national origin and are to be ordered to promulgate an effective policy against such discrimination and to adhere thereto;

d.   The Defendants are to compensate the Plaintiff, reimburse the Plaintiff, and to make the Plaintiff whole for any and all pay and benefits the Plaintiff would have received had it not been for the Defendant's unlawful actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority. The Plaintiff should be accorded all benefits unlawfully withheld from the date the Plaintiff first suffered discrimination at the hands of the Defendant or its agents until the date of verdict or judgment;

e.   The Plaintiff is to be awarded actual damages, as well as punitive damages;

f.   The Plaintiff is to be awarded damages for the pain, suffering, and humiliation caused to him by the Defendant's actions;

g.   The Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper, and appropriate;

h.   The Plaintiff is to be awarded the costs and expenses of this action and attorneys' fees as provided by applicable federal and state law;

i.   Any verdict in favor of the Plaintiff is to be molded by the Court to maximize the financial recovery available to the Plaintiff considering the caps on certain damages set forth in applicable federal law and to reflect the tax consequences thereof;

14

j.  The Plaintiff is to be granted such additional injunctive or other relief as may be requested during the pendency of this action to ensure the Defendant does not engage – or ceases engaging – in unlawful retaliation against Plaintiff or other witnesses in this action;

k.  The Court is to maintain jurisdiction of this action after verdict to ensure compliance with its Orders therein.

l.  Plaintiff demands trial by jury on all issues so triable pursuant to Fed.R.Civ.P. 38.

Respectfully submitted,

KOLMAN ELY, P.C.

Timothy M. Kolman, Esquire
414 Hulmeville Avenue
Penndel, PA 19047
(T) 215-750-3134 / (F) 215-750-3138
*Attorneys for Plaintiff*

Dated:      January 16, 2019

15